### JOSIAH BACON *vs.* THE CITY OF BOSTON.

Sidewalks, when a part of the public streets, as in the city of Boston, are to be kept in a safe and convenient state of repair for public use ; and a sidewalk, in the city of Boston, six and a half feet in width, should be so constructed and fitted for use, through its entire width, as to be safe and convenient.

The liability of a city or town, for an injury occasioned by a defect in a street or way, is not varied or discharged, if the defect is occasioned by the exercise of the right of an adjoining owner of land, to use the street or way for some private purpose, not inconsistent with the right of the public.

The act of 1833, *c.* 128, respecting the streets of Boston, and the city ordinance passed in pursuance thereof, authorizing the surveyors of highways to regulate the width and height of sidewalks, and to accept and bind the city to maintain the same, when built and relinquished to the city by the abutters, do not exonerate the city, when a sidewalk has been thus built, accepted and relinquished, from their liability, under the Rev. Sts. *c.* 24, § 22, for defects therein.

On the trial of an action against the city of Boston, for an injury sustained by the plaintiff, in consequence of falling into a cellar window opening into a sidewalk within the limits of a public street, the existence of similar apertures in various other parts of the city, in great numbers, and for a long time, though proper evidence for some purposes, is not evidence from which the jury may infer that such apertures are not actionable obstructions.

THIS was an action on the case, to recover damages for an injury received by the plaintiff, in consequence of an alleged defect in Lancaster street. The trial was before *Wilde*, J.

The plaintiff offered evidence tending to show, that as he was returning home from his shop in the evening of January 16th, 1846, he stepped his right foot into an opening in the sidewalk, called a cellar window, by means of which he received an injury in his left ankle. The shop of the plaintiff was in Lancaster street, a short distance from the place where the injury occurred. It appeared, that the opening in ques-

tion was thirty-seven inches long, and extended into the sidewalk fourteen inches in width. The sidewalk at this place was six feet six inches wide, and the street about forty feet wide.

It was admitted, that Lancaster street was paved by the defendants about the year 1842, and that the sidewalk was laid under the direction of the surveyors of highways, and by them accepted. The aperture in question was made at that time, and continued unchanged up to the time of the alleged accident.

The defendants offered evidence, that Lancaster street and other streets in that part of Boston known as the mill pond were formerly covered by water, and that the land there had been raised about four feet, within twenty years, in order to make the streets ; that the building adjacent to the cellar window in question was erected about twenty years ago ; that it was originally built so that the first floor was about four feet above the travelled way, and the cellar window was flush upon the street; that as the street was filled up, a box was fitted into the sidewalk to light the window, and this had gradually increased to its present depth, as the street was filled up from time to time ; and similar openings from similar causes existed in many of the streets in that part of the city, and had so existed for a long period.

Two policemen testified, that they had perambulated most of the streets within the city, and especially at the north part, and found the following apertures into the sidewalks, namely : cellar doors, which were open, 399 ; passage ways extending into the street more than six inches, 512 ; cellar windows extending into the street more than six inches, 604.

The defendants also referred to the act of 1833, *c.* 128, "respecting the streets of Boston," and to an ordinance of the city passed in pursuance thereof, in the same year.

The tenth section of the act provides, that the city council may, from time to time, empower the surveyors of highways so to regulate the width and height of the sidewalks of any public squares, places, streets, lanes, or alleys, as shall, in the

judgment of the surveyors, be most conducive to the convenience and interest of the city, any law of the commonwealth to the contrary notwithstanding ; and may empower the surveyors to accept such sidewalks, after the same shall be put in good and perfect repair, and relinquished to the city by the abutters ; and may also order, that after such relinquishment, such sidewalks may be maintained at the expense of the city.

The ordinance, made in pursuance of the act of 1833, contains the following provisions : —

" SEC. 24. Be it further ordained, That the surveyors of highways are hereby empowered so to regulate the width and height of the sidewalks of any public squares, places, streets, lanes or alleys in the city, as shall, in the judgment of said surveyors, be most conducive to the convenience and interest of the city, and that the said surveyors may accept, on such conditions as they shall deem expedient, any sidewalk after the same shall be put in good and perfect repair by the abutters, on any of the squares, places, streets, lanes or alleys, and after the same shall be relinquished in writing to said city.

" SEC. 25. Be it further ordained, That after such relinquishment and acceptance, such sidewalks shall be maintained at the expense of the city ; provided, however, that when any sidewalk shall require repairs in consequence of any defect in the cellar door, curb, step, or steps, cellar window, coal hole, cellar wall, or from any other cause within the control of the owner or occupant of the estate to which said sidewalk is attached, then and in that case said repairs shall be made at the expense of said owner or occupant, any law to the contrary notwithstanding."

The defendants contended : —

1. That the city were not liable in the present action ; and that the plaintiff's remedy, if any, was upon John G. Loring, the owner of the building adjacent to the cellar window, when the injury was received.

2. That by the special act of the legislature, and the ordinance referred to, the surveyors of highways had a right to regulate the sidewalks as to width and length ; and if the jury were satisfied, that the surveyors had accepted this sidewalk, with the cellar window in it, then the aperture was lawfully there, and the city were not liable in the present suit.

3. That the fact that there were so many similar apertures in the city, which had existed for so long a time, was

evidence from which the jury might infer that such apertures were not actionable obstructions.

4. That by the act and ordinance aforesaid, the legislature had, in effect, sanctioned obstructions of a similar character

The judge overruled these points, and instructed the jury that the whole question was open to them ; that the defendants were liable, if the jury were satisfied that the plaintiff had used due care, and the sidewalks were defective ; that what was a defect was a question for the jury ; that the special act of the legislature did not place the city in any different position from other towns, so far as the present action was concerned ; that the fact that similar apertures had existed for a long time did not help the defendants, and did not tend to show that the alleged defect was not actionable, if, in fact, the sidewalk was in a dangerous condition, of which the defendants had due notice.

The jury returned the following verdict : —

"The jury find that the defendants are guilty, in manner and form as the plaintiff has alleged against them, and also that they had reasonable notice of the said defect in the highway, as declared in the writ, and assess double damages, in the sum of seventeen hundred and eighty-seven dollars and fifty cents."

The defendants alleged exceptions to the various rulings of the judge ; and if any of them are wrong, the verdict is to be set aside.

*P. W. Chandler,* (city solicitor,) for the defendants. 1. It may be admitted, that the cellar window complained of was, in one sense, a defect, as a tree set in the street for shade, or a lamp post, or a pump, might be ; but it was not such a defect, or want of repair, as is contemplated by the statute. *Howard* v. *North Bridgewater,* 16 Pick. 189. In that case, the alleged defect consisted of several large, loose stones lying at the distance of about eight feet from the travelled part of the road, and it was said by the court, that the statute did not mean, "that the whole of the road, from one boundary to the other, shall be made smooth ; " that "it is, in some

measure, a practical question, what obstructions a town is obliged to remove ; " and that if the town, in the particular case, would be liable to an indictment, they were answerable, but otherwise, not.   The present case does not differ in principle.   Here was a good paved street, forty feet wide, with a sidewalk on each side.   The sidewalk, exclusive of the aperture in question, was about five feet wide.   The defendants contend, that they were not bound to make the whole street " smooth from one boundary to the other ; " and that the case should have been left to the jury, with instructions, that if there was a safe and convenient travelled way, and a safe and convenient sidewalk, outside of the window in question, the defendants were not liable.

2.   The instructions, relative to the evidence of other similar apertures existing in the city, were wrong.   This evidence was not offered for the purpose of defending a nuisance by prescription ; but for the purpose of showing, that the cellar window was no nuisance ; which might be inferred from the fact, that precisely similar apertures had existed in great numbers, and for a long period.   If it be " a practical question," as was said by the court in the case cited, " what obstructions a town is obliged to remove," it is one upon which usage and custom may have an important bearing.   A tree set in a street is an obstruction, by which a traveller, in the night time, might be seriously injured.   In such a case, if an action were brought, would it not be competent for the defendants to show, that the streets were full of trees, and that it was a common custom to set them in the sidewalks, for shade ?   The existence of the usage, as testified to, shows also that these apertures are convenient and necessary, and well known to all the citizens.   The defendants insist, further, that the aperture in this sidewalk was a reasonable use, which the adjoining occupant had a right to make of the street, for the purpose of admitting light to his cellar.   *O'Linda* v. *Lothrop*, 21 Pick. 292, 297.   In that case, the court say : " What may be deemed a reasonable and proper use of a way, public or private, must depend much on the local

situation, and much on public usage." The same principle is recognized, with reference to similar apertures in the streets of Boston, in the case of *Underwood* v. *Carney*, 1 Cush. 285. The evidence in question had a tendency to show what was "a reasonable and proper use" of the street, by the proprietors of the estates adjoining.

3. The defendants are exempted by the act of 1833, c. 128, and the ordinance under it, from all liability in the present case. The sidewalk was laid under the direction of the surveyors of highways, and by them accepted. The law has left the subject to their discretion, and they have exercised it, by accepting the sidewalk with this opening. The aperture was consequently lawful, and if the plaintiff has sustained damage thereby, it is *damnum absque injuria.*

4. If the defendants are liable, they cannot protect themselves hereafter, but by closing up all those openings into the sidewalks, which cannot be covered with a grating; an act, which would subject proprietors to very great expense and inconvenience; but which the defendants must have the right of doing, if they would otherwise be liable for accidents of the kind now under consideration.

*T. Willey*, for the plaintiff.

DEWEY, J. 1. The objection, that the owner of the building adjacent to the cellar window, and not the city of Boston, is the party liable for the damages sustained by the plaintiff, is not well maintained. Upon this point, the law is very clear. The liability for injuries occasioned by defects in the public streets attaches to the city, and this liability extends to the sidewalks, when they constitute a part of the public streets. As such, they are to be kept in a safe and convenient state of repair for public use. It does not vary the principle, or discharge the liability, that individuals, as owners of the fee, are permitted to use the premises, above or below the easement, for private purposes not inconsistent with the right of the public.

2. It was more strongly insisted, that the street being forty feet in width, and the defect extending only fourteen inches

into the sidewalk, ample space was left for the safety and convenience of travellers ; and, therefore, that the city should not be charged with the loss or damage sustained by the plaintiff. Much reliance was placed on the case of *Howard v. North Bridgewater*, 16 Pick. 189. But the cases are dissimilar. It is true, that when a road of suitable width is made and kept in a proper state of repair, and guarded with proper barriers to protect travellers using the same, if a traveller voluntarily leaves the made road or usually travelled path, and thereby encounters pitfalls, or obstructions, endangering his person or his property, he can have no remedy against the town for an injury thus received without the limits of the travelled way. But the case supposed is not one of city travel. The law, as to the extent of repair, and what will constitute obstructions rendering a public way unsafe and inconvenient for the traveller, must depend in a good degree upon the locality of the road. In the present case, the entire sidewalk was only six and a half feet in width. A sidewalk of this width, in the city of Boston, should be for its whole extent so constructed and fitted for use, as to be safe for all persons passing over it.

3. It was insisted, that the city was not liable for injuries sustained by reason of defects in the sidewalk in question, on the ground, that by a special statute applicable to Boston, the surveyors of highways have the right to regulate sidewalks ; and the surveyors of highways having accepted this sidewalk, with the cellar window occupying a part of the space, the aperture was lawfully there. But this statute provision, giving such authority to the surveyors, was passed, we apprehend, *alio intuitu.* Its object was to place in the hands of the city authorities ample means for the supervision of sidewalks; thus securing the safety of the traveller, and thereby exonerating the city from liability for damages by reason of defective sidewalks. The presiding judge, therefore, very properly ruled, that these special provisions, as to the acceptance of sidewalks, do not exonerate the city from liability for defects in them, and for neglect to keep them in a safe and convenient state for the public use.

4. Upon the remaining point, that the existence of similar apertures in various other parts of the city, and that for a long period, did not show that the alleged defect was not one for which the city was liable, if any damage were occasioned thereby, the ruling was also correct.

That the jury should consider all facts bearing upon the manner in which the streets of the city are used, and the purposes of sidewalks, and how far openings in them are obstructions to their proper use, and for this purpose have reference to the nature of such apertures, and the extent to which they have heretofore been permitted to exist, might be properly urged; but the fact, that similar apertures had existed for a long time, and to a great extent, would not authorize the jury to find, that such apertures "were not actionable obstructions," or such defects as would charge the city, if an injury was occasioned thereby to a traveller, and if in fact such apertures caused the sidewalks to be in a dangerous state.      *Judgment on the verdict.*